## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-CV-01179-WDM-KMT

**BERKSHIRE PROPERTY ADVISORS, LLC**

    *Plaintiff,*

vs.

**GRIFFIS PREMIUM APARTMENT FUND, LLC**,
**GRIFFIS GROUP OF COMPANIES, LLC,**

    *Defendants.*

---

## AMENDED COMPLAINT AND JURY DEMAND

---

Defendant Berkshire Property Advisors, LLC ("Berkshire"), by and through its attorneys Messner & Reeves, LLC, hereby submits its Amended Complaint against Defendant Griffis Premium Apartment Fund, LLC and Griffis Group of Companies, LLC, and states as follows:

## <u>JURISDICTION</u>

1.    Berkshire is a Delaware LLC whose members are KGP-1 Incorporated (a Massachusetts Corp.), DK BPA, LLC (a Delaware LLC), GK BPA, LLC (a Delaware LLC) and Frank Apeseche (a Massachusetts resident).  The sole member of DK BPA, LLC is Douglas Krupp (a Massachusetts resident) and the sole member of GK BPA, LLC is George Krupp (a Massachusetts resident).

2.    Griffis Premium Apartment Fund, LLC is a Delaware limited liability company authorized to do business in Colorado.

{00385367 / 1}

3.      Griffis Group of Companies, LLC is a Colorado limited liability company.

4.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.      Because the amount in controversy exceeds $75,000.00 and there is complete diversity of parties, jurisdiction is proper before this Court.  28 U.S.C. § 1332; *Hale v. Mastersoft International Pty. Ltd.*, 93 F. Supp. 2d 1108, 1112 (D. Colo. 2000.)

## VENUE

6.      This dispute involves the real property located at 4400 South Monaco Street, Denver, Colorado, commonly known as the Enclave@Belleview ("Enclave").

7.      Defendants used a law firm located in Denver, Colorado to facilitate in their civil conspiracy to interfere with Plaintiff's prospective business relations.

8.      Defendants have conspired with U.S. Advisor, LLC, USA Enclave at Belleview Station, DTS, USA Enclave at Belleview Station, LLC, USA Enclave at Belleview Station, SPE, LLC and USA Enclave at Belleview Station Leaseco, LLC (collectively "EABS"), to interfere with Plaintiff's prospective business relations by improperly using a lawsuit, and discovery associated therewith, currently pending in the United States District Court for the District of Colorado before Judge Phillip Brimmer, styled 09-cv-00697-PAB-CBS.

9.      Venue for this action is proper in the United States District Court for the District of Colorado.

{00385367 / 1}

## GENERAL ALLEGATIONS

10.     This lawsuit arises out of the same facts and circumstances that form the basis of the lawsuit pending in the United States District Court for the District of Colorado before Judge Phillip Brimmer, styled 09-cv-00697-PAB-CBS.

11.     The Enclave is a large, multi-unit rental building.

12.     US Advisors purchased Enclave in 2007 for $32,000,000.00, and structured the purchasing using various entities.  LaSalle (predecessor to Bank of America ("BofA") as lender on the Enclave loans) made a total of approximately $28,000,000.00 in loans, secured by mortgages encumbering Enclave and secured by the personal guarantee of the principal of US Advisors, Kevin Fitzgerald.

13.     EABS is in financial difficulty and needs outside financing to avoid foreclosure.

14.     Berkshire is a large real estate investment company specializing in the purchase and sale of multiunit rental buildings throughout the United States and has experience with purchasing distressed real estate.

15.     EABS sought outside financial help from many different potential lenders, including Griffis Premium Apartment Fund, LLC and Berkshire.

16.     EABS and Griffis worked together to reach a recapitalization deal with BofA beginning in August of 2008.

17.     Because of the distressed state of the Enclave loans, BofA informed EABS and potential investors that it would be willing to significantly discount the face value of the Enclave loans in exchange for a new investor finding financing or cash to pay off the Enclave loans.

18.     BofA approached Berkshire and offered to sell Berkshire the Enclave loans. BofA and Berkshire reached an agreement for Berkshire to purchase the Enclave loans.  This agreement was to close on March 31, 2009.

19.     When EABS discovered that BofA had agreed to sell the Enclave loans to Berkshire, EABS filed a Complaint, Motion for Preliminary Injunction, and Ex Parte Motion for Temporary Restraining Order ("Complaint and Motions").

20.     The allegations in EABS' Complaints and Motions are without any basis in fact and are unsupported by law, and Berkshire filed counterclaims for intentional interference with contractual relations, intentional interference with prospective business relations, abuse of process, and injunctive relief in that case, 09-cv-00697-PAB-CBS.

21.     EABS filed its Complaint and Motions for the purpose of altering the status quo and interfering with the deal between BofA and Berkshire, with the purpose of preventing the sale of the Enclave loans to Berkshire by BofA so that EABS could instead close a deal with Griffis Premium Apartment Fund, LLC.

22.     EABS succeeded in interfering with Berkshire's agreement with BofA.  The closing scheduled for March 31, 2009 was canceled and the anticipated sale of the Enclave loans to Berkshire did not occur.

23.     On April 20, 2009, Judge Brimmer ordered that neither party could consummate any transaction affecting any party's interest in the property without giving the other party notice and a chance to file a motion for temporary restraining order.  Judge Brimmer, Berkshire, and EABS contemplated that through this order the parties would both have the right to negotiate with BofA.

24.     Judge Brimmer's April 20 Scheduling Order stated that:

> Prior to the entry of a ruling on the motion for preliminary injunction, either party will give the other ten business days notice prior to closing that they **intend to consummate a transaction related to any party's interest in the property at issue in this case**, the 238-unit apartment complex located at 4400 South Monaco Street in Denver, Colorado, Commonly known as "The Enclave at Belleview Station" ("Enclave").
>
> Any party receiving such notice will have the right to file a TRO if, upon conferral, the other party refuses to cancel the closing in question.  Any party filing a TRO will do so within 48 hours of the proposed closing.
>
> The parties are prohibited from closing until the Court rules on the TRO.
>
> (Emphasis added)

25.     On May 4, 2009, Magistrate Judge Craig B. Shaffer signed a Protective Order. This Order allowed the Berkshire and EABS to fulfill their discovery obligations while protecting their trade secrets from disclosure to competitors.

26.     On May 5, 2009, EABS' counsel wrote to Griffis' counsel regarding a proposed Payoff Agreement with BofA, recognizing that BofA had every right to shop the Enclave loans to other prospective buyers: "You will note that the new section 9 states that B of A can shop around while the payoff is pending.  He presumably has the right already, so I don't see that anything is really conceded there."

27.     On the afternoon of May 6, 2009, Berkshire provided supplemental discovery to EABS's counsel, revealing that Berkshire had approached BofA with another offer to purchase the Enclave loans.

28.     The next morning, counsel for Griffis Premium Apartment Fund, LLC contacted EABS' counsel and informed them that they wanted BofA to "carve out Berkshire as one of the third-party purchaser with whom it can discuss back-up offers."  David Birnbaum, the managing director of Griffs Group of Companies, LLC, Tom Barta, CFO of Griffis Group of Companies, LLC, as well as EABS' counsel, were copied on the correspondence.  In so doing, Defendants encouraged and pressured their co-conspirator to violate Judge Brimmer's April 20 Order by consummating a transaction related to the parties' interests in Enclave without giving notice to Berkshire.

29.     Defendants became aware of Judge Brimmer's April 20 Order well before May 6, 2009.

30.     The idea of violating Judge Brimmer's April 20 Order was created by Defendants shortly after Berkshire produced materials to EABS under the Protective Order.  Thereafter, Defendants conspired with EABS to carry through with Defendants' unlawful scheme.

31.     The consideration for Bank of America's agreement to "carve out Berkshire" came in the form of $100,000 that Defendants had deposited pursuant to the terms of the Purchase and Sale Agreement executed between Defendant Griffis Premium Apartment Fund, LLC and USA Enclave at Belleview Station, DST.

32.     Bank of America, in exchange for $100,000 of Griffis' money (Section 4, Payoff Agreement), and at Griffis' request, agreed with Griffis and EABS to exclude Berkshire, *and only Berkshire*, from discussing offers related to the Enclave loans, violating Judge Brimmer's April 20 Order.  This secret deal secured for Griffis a right to purchase the Enclave property, secured for US Advisors and its principals a release from their personal liability, and directly affected the interests of Berkshire, Griffis, Bank of America, and EABS in the property by preventing Berkshire from negotiating with, making an offer to, or procuring an option contract with, Bank of America.   The secret deal intentionally destroyed Berkshire's continuing negotiations with Bank of America in relation to the Enclave property.  This transaction relating to the parties' interest in Enclave was consummated on May 14, 2009 (before Berkshire discovered the deal through its review of discovery produced in the proceeding before Judge Brimmer), when Bank of America and EABS signed a Payoff Agreement, amending the language in Section 9 (referenced in Paragraph 24 above) to read:

-7-

**Right to Discuss Back-up Offers; Confidentiality.**  During the period commencing on the date hereof and expiring on the close of business on the date that BOA receives the Payoff Amount, BOA may solicit and otherwise discuss offers in the nature of back-up offers with potential third party purchasers for the Loan and the Loan Documents, **excepting Berkshire Property Advisors, LLC, or any principal or affiliate thereof.**

33.    The transaction above took effect immediately upon transfer of the $100,000 to Bank of America, and related to the parties' (including Berkshire and EABS) interest in the Enclave property.

34.    After EABS' actions destroyed the original agreement between BofA and Berkshire, Berkshire had continued to discuss the purchase of the Enclave loans with BofA and had made BofA a series of offers.  These ongoing negotiations were killed by the unlawful actions of EABS and Defendants, actions which intentionally violated Judge Brimmer's April 20 Order.  Defendants, who provided the funds necessary to ensure BofA would not speak with Berkshire, directly interfered with Berkshire's communications with BofA and precluded Berkshire from negotiating for either a direct purchase of the Enclave loans or a back-up position.

### FIRST CLAIM FOR RELIEF
### CIVIL CONSPIRACY

35.    Berkshire incorporates the forgoing paragraphs 1 through 34 as though expressly set forth herein.

36.     EABS and Defendants agreed on closing a deal with BofA whereby the Enclave loans would be satisfied at a significant discount.

37.     EABS and Defendants knew that Berkshire was working to reach an agreement with BofA either to buy the Enclave loans or to buy the Enclave loans in the event the pending litigation prevented EABS and Defendants from closing the deal with BofA.

38.     EABS and Defendants have worked together and agreed on a course of action to ensure the closing of their deal with BofA and to prevent Berkshire from negotiating with BofA for the purchase of the Enclave loans or the negotiating with BofA a back-up agreement.  The concerted actions of EABS and Defendants included reaching an agreement to cause BofA, who remains free to consider offers from any investor other than Berkshire, to agree not to consider offers to purchase the Enclave loans or back-up offers to purchase the Enclave loans from Berkshire.  Defendants actively encouraged and financed this transaction in knowing violation of Judge Brimmer's April 20 Order.

39.     The goal of the agreement between EABS and Defendants was to interfere with Berkshire's prospective business relations.

40.     The means employed by EABS, which include using its Complaint and Motions for a purpose for which they were not designed and intentionally interfering with Berkshire's contractual relations and prospective business relations, were unlawful.  The actions of Defendants in encouraging, aiding and abetting EABS' violation of Judge Brimmer's April 20 Order were similarly unlawful.

41.     Berkshire has been damaged by Defendants' civil conspiracy in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

42.     Berkshire incorporates the forgoing paragraphs 1 through 41 as though expressly set forth herein.

43.     EABS' intentional interference with contractual relations, intentional interference with prospective business relations, and abuse of process has conferred a benefit upon Defendants.

44.     Defendants had knowledge of, and accepted, those benefits.

45.     Defendants encouraged, aided and abetted EABS' unlawful and wrongful actions.

46.     These benefits came at the expense of Berkshire.

47.     It would be unjust and inequitable to allow Defendants to retain those benefits.

48.     Berkshire has been damaged by Defendants' unjust enrichment in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

49.      Berkshire incorporates the forgoing paragraphs 1 through 48 as though expressly set forth herein.

50.     Defendants knew that Berkshire was working to reach an agreement with BofA whereby Berkshire would purchase the Enclave loans.  Further, Defendants knew that there was a strong likelihood that BofA would agree to work with Berkshire and enter an agreement with Berkshire if, as contemplated by Judge Brimmer's Order, the parties were given an opportunity to freely negotiate with BofA.

51.     Defendants knew that Berkshire was working to reach a back-up agreement with BofA, whereby BofA would sell Berkshire the Enclave loans in the event the pending litigation between EABS and Berkshire prevented EABS and Defendants from closing a deal with BofA.

52.     Defendants intentionally caused BofA not to form these prospective business relations with Berkshire.

53.     Under the circumstances, Defendants' actions were wrongful.  Specifically, Defendants conspired, aided, and abetted the willful violation of a standing order from Judge Brimmer.

54.     Berkshire has been damaged by Defendants' intentional interference with Berkshire's prospective business relations in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### INJUNCTIVE RELIEF

55.     Berkshire incorporates the forgoing paragraphs 1 through 52 as though expressly set forth herein.

56.     Berkshire seeks preliminary injunctive relief, pursuant to Fed. R. Civ. P. 65,

enjoining Defendants from executing or closing any loan payoff or modification with BofA, whether alone or in conjunction with any other entity.

57.     Berkshire further seeks preliminary injunctive relief, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from enforcing, seeking to enforce, or causing any co-conspirator to enforce the anti-competitive prohibition contained in Section 9 of the Payoff Agreement that prevents BofA from discussing back-up offers with Plaintiff.

58.     Berkshire will suffer irreparable harm unless this Court enjoins Defendants from interfering with its prospective business relations.   This harm is irreparable because the ownership of the Enclave loans will determine the ownership of the real property at issue in this case.  Berkshire, but for the acts of EABS and Defendants, would have closed the purchase of the Enclave loans from BofA.  Therefore, the acts of EABS and Defendants are depriving Berkshire of the unique value of Enclave as well as the unique opportunity to operate the leasing operations at Enclave.

59.     Because Berkshire is likely to succeed in its pending action to enjoin EABS from closing a deal with BofA, the party who successfully reaches a back-up agreement with BofA will likely purchase the Enclave loans.

60.     Berkshire is likely to reach a back-up offer with BofA as it previously had an agreement to buy the Enclave loans on terms it is still willing to offer to BofA.

61.     Further, there is a strong likelihood that BofA would agree to sell the Enclave loans directly to Berkshire if, as contemplated by Judge Brimmer's Order, the parties were given

an opportunity to freely and fairly negotiate with BofA.

62.     Berkshire is likely to succeed on the claims for relief listed herein.

63.     An injunction in Berkshire's favor is favored by the balance of the equities as it would prevent Defendants from profiting from their civil conspiracy with EABS.

64.     An injunction in Berkshire's favor furthers the public interest in competitive pricing of assets and freedom of contract.

WHEREFORE, Berkshire respectfully requests that the Court enter judgment in its favor and against Defendants on its claims for relief, order injunctive relief in favor of Berkshire, and award Berkshire such damages, fees, and other relief as this Court deems to be appropriate.

## JURY DEMAND

**Plaintiff demands a trial by jury of all issues so triable**

Respectfully submitted this **8th** day of July, 2009

**MESSNER & REEVES, LLC**

*/s/ Matt Groves*
Matthew R. Groves, Esq. (#27315)
Edward J. Hafer, Esq. (#40230)
Bruce A. Montoya, Esq. (#14233)
Messner and Reeves, LLC
1430 Wynkoop Street, Suite 300
Denver, CO 80202
(303) 623-1800
*Counsel for Plaintiffs Berkshire Property Advisors, LLC*

Address of the Plaintiff:
Berkshire Property Advisors, LLC
1 Beacon Street, Suite 1500
Boston, MA  02108

{00385367 / 1}

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 8, 2009, I electronically filed the foregoing **BERKSHIRE PROPERTY ADVISORS, LLC'S AMENDED COMPLAINT** via CM/ECF on the following:

Benjamin A. Kahn, #29073
Zhonette M. Brown, # 40011
Brownstein Hyatt Farber, P.C.
410 Seventeenth Street
Suite 2200
Denver, Colorado 80202-4437

*/s/ Juanita Sena*
Juanita Sena